UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TYRONE PETTIES,                          )
                                         )
               Plaintiff,                )      12 C 9353
                                         )
       v.                                )      Judge George M. Marovich
                                         )
IMHOTEP CARTER, and                      )
SALEH OBAISI,                            )
                                         )
               Defendants.               )


**MEMORANDUM OPINION AND ORDER**

       Dissatisfied with the treatment he received in prison after he injured his Achilles tendon

on his left leg, plaintiff Tyrone Petties ("Petties") filed suit against defendants Dr. Imhotep

Carter ("Dr. Carter")[1] and Dr. Saleh Obaisi ("Dr. Obaisi").  Defendants move for summary

judgment.  For reasons set forth below, the Court grants defendants' motion for summary

judgment.

**I.     Background**

       Unless otherwise noted, the following facts are undisputed.[2]

_____

       [1]The parties disagree about the spelling of defendant's first name.  Defendant (who ought
to know) says it is spelled Imhot.  The Court uses the spelling listed on the docket sheet.

       [2]Local Rule 56.1 outlines the requirements for the introduction of facts parties would like
considered in connection with a motion for summary judgment.  The Court enforces Local Rule
56.1 strictly.  Facts that are argued but do not conform with the rule are not considered by the
Court.  For example, facts included in a party's brief but not in its statement of facts are not
considered by the Court because to do so would rob the other party of the opportunity to show
that such facts are disputed.  Where one party supports a fact with admissible evidence and the
other party fails to controvert the fact with citation to admissible evidence, the Court deems the
fact admitted.  *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir.
2004).  This, of course, does not absolve the party putting forth the fact of its obligation to
support the fact with admissible evidence.  *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884
(7th Cir. 2012).  It is not enough at the summary judgment stage for either party to *say* a fact is

Plaintiff Petties is a 48-year-old inmate of the Illinois Department of Corrections and is (and was at all relevant times) incarcerated at Stateville Prison ("Stateville") in Lockport, Illinois. The Illinois Department of Corrections contracts with Wexford Health Services, Inc. ("Wexford") for certain health care services at Stateville.

Wexford employed defendant Dr. Carter as medical director at Stateville Prison from July 25, 2011 through May 10, 2012. The other defendant, Dr. Obaisi, has been medical director at Stateville Prison since August 2, 2012. The medical director is responsible for all health care provided by Wexford at Stateville and for "ensuring timely and efficient response" to inmates' health care needs.

On January 19, 2012, Petties required medical treatment when he injured his Achilles tendon on his left ankle. This was not his first Achilles tendon injury. Petties had previously (it is unclear when) injured the Achilles tendon on his right ankle, which was still healing when he injured his left. That day in January, Petties felt a pop while he was walking up a flight of stairs and fell to the floor in pain. Petties was taken to Stateville's health care unit, where he complained of left lower leg pain and weakness in his ankle. Dr. Dubrick prescribed Vicodin (a painkiller), ice, crutches and "lay-in meals," which is to say Petties's meals were brought to him so he did not need to walk to eat his meals. The same day, Dr. Carter signed a referral for an ankle MRI for Petties. The referral says the reason for the MRI is "Achille's tendon rupture playing sports." Dr. Baker approved the MRI on January 25, 2012.

Although he had crutches, ice and painkillers, Petties was not initially prescribed a splint, brace or bandage to immobilize his ankle. Petties felt terrible pain when his ankle moved. An

---

disputed. The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

outside physician, Dr. Puppala, who treated Petties, testified that an Achilles tendon rupture did not always need to be immobilized. He stated, "I think it provides a lot of comfort being immobilized, but it doesn't have to be done. The Achilles would probably heal without it." Petties' other outside treating physician, Dr. Chmell, testified that he would always immobilize an Achilles tendon rupture unless the patient had an open wound.

In the weeks that followed Petties's injury, security issues sometimes kept Petties from doctor appointments. On January 25 and 26, 2012, Petties was unable to see prison medical personnel due to a prison lockdown. Petties saw a prison doctor on January 27, at which time Petties told medical personnel that he had weakness in his left foot, but it could bear weight. Another security problem delayed an X-ray, which Petties was scheduled to have on February 8, 2012. The medical director had the authority to have a prisoner referred out for medical treatment only in emergency and urgent situations.

Petties saw Dr. Carter on February 14, 2012. Dr. Carter noted that Petties had a shortened and swollen left Achilles tendon. Dr. Carter put in an order for Petties to have a low bunk, crutches and a medical lay-in. That order did not expire until April 14, 2012. Dr. Carter also ordered Petties to walk slowly and avoid stairs. Also on February 14, Dr. Carter prescribed Petties Vicodin (for pain), as well as Motrin and Toradol (both NSAIDs to reduce inflammation).

On March 6, 2014, Petties finally received the ordered MRI at Provena St. Joseph Medical Center. The MRI showed that Petties had suffered a complete Achilles tendon rupture measuring between 2.0 and 4.7 centimeters. Next, on March 14, 2012, Petties was examined by Dr. Puppala at Hinsdale Orthopaedics. In his report, Dr. Puppala noted:

> Mr. Petties has not been placed into any sort of cast on his left side. He has been walking on this. I think this is contributing to his pain and also likely contributing to some gapping at his rupture site. I think immobilization in a boot will be of great benefit to him. It should allow him to walk with less pain. He may of course use crutches for minimization of weight bearing. I will refer him to a foot and ankle specialist for definitive treatment. I think he could benefit

from repair of his Achilles tendon; however, at this juncture being 2 months out from injury, he might even need graft augmentation of this rupture to have the best possible outcome.

(Plaintiff's Exh. E at 9).

By the next day, Petties's ankle was in a boot. On March 15, 2012, Dr. Carter examined Petties. Dr. Carter ordered Petties a daily bag of ice and to remain in the boot. The orders were to stay in place until June 15, 2012. Dr. Carter told Petties he would not order surgery to fix the tendon, because that would be too expensive. Dr. Carter told Petties that his job was to save money for Wexford. Nonetheless, Dr. Carter referred Petties to the orthopedic clinic at the University of Illinois at Chicago.

Petties continued to see medical staff at Stateville regularly.[3] Petties was given a prescription for Norco (for pain) on March 23 and April 6. On April 5, Petties was given a prescription for Vicodin and ibuprofen. In April, a doctor ordered Petties support shoes. Petties's prescription for Vicodin was renewed on April 19, May 30 and June 18. On May 11, 2012, Petties's prescription for the orthopedic boot, the low bunk and the crutches was extended. On June 18, the prescription for the boot, the low bunk and the crutches was extended until December 18, 2012.

On July 2, 2012, Petties saw the ankle specialist, Dr. Chmell, at UIC. Dr. Chmell found that Petties had a full range of motion in his left ankle. Dr. Chmell recommended both a follow-up MRI and "physical therapy and gentle stretching exercises at least 2 times per week." Dr. Chmell testified that Petties was not a surgical candidate with respect to his left Achilles tendon.

At some point thereafter, Petties had an appointment with Dr. Obaisi at Stateville. Dr. Obaisi informed Petties that he could not have physical therapy. Dr. Obaisi testified that Petties

---

[3]The parties do not say which doctor(s) ordered the various treatments and pain medications.

had had physical therapy when he injured his right Achilles tendon and that he could do the same exercises for his left. Dr. Obaisi told Petties that he could not have surgery, because Wexford would not pay for it. On July 20, 2012, Dr. Obaisi approved another MRI for Petties.

On September 4, 2012, Petties had a second MRI. This MRI showed a partial tear in Petties's left Achilles tendon. According to Dr. Chmell, this meant Petties's Achilles tendon was healing. On September 26, 2012, Dr. Obaisi examined Petties and concluded that Petties had tendinitis. Dr. Obaisi ordered Tylenol for Petties. Over the next few months, Dr. Obaisi continued to treat Petties's tendonitis with Tylenol, a low bunk and a boot.

On November 19, 2012, Petties mailed his complaint to federal court. Prior to filing his complaint here, Petties had filed grievances with the Illinois Department of Corrections. On February 1, 2012, for example, Petties filed a grievance. On the grievance form, Petties wrote:

> On 1-19-12 I came from the gym and was walking up the front of Charlie House Stateville CC Stairway when my left lower leg bend on the stairs on account of my putting presher on it because my right lower leg has been injured over 1 1/2 years I've been compensating presher on my left lower leg because stateville medical staff have neglected helping me with the pain I have been having on my right lower leg. I have told "med tech" Joe, my physical therapist (Jose), my psych Doctor, Ms. Taller, Ms. Hart and numerous other nurses. On August 14, 2011, I went to the Health care and seen the medical Director Mr. Carter I hold him about my pain.
>
> I wont my $5 dollars return to me because my injury was clearly a emergency. I wont Dr. Carter and the medical staff investigated for neglect of my medical.

(Def. Exh. I at 195). The grievance officer construed this grievance as a complaint that Petties was not receiving proper medical care. The officer denied the grievance on April 30, 2012, saying, "Issue appears to be resolved as grievant appears to be receiving appropriate medical care at this time. There is no justification for co-pay reimbursement." (Def. Exh. I at 194). Petties appealed the denial of his grievance to the Administrative Review Board, which upheld the denial on May 21, 2012.

Petties filed another grievance on April 24, 2012. In that grievance, Petties complained:

I have been to a orthopedics and he has recommended me to go to a foot specialist. It have been over 2 months since he assigned me to a foot specialist and I was told that I have been approved to go out since 3-19-12 but I am still waiting.

(Def. Exh. I at 213). This grievance was denied on the grounds that Petties "went out to the orthopedic doctor on 3/15/12."

Petties filed three more grievances on August 4, August 8 and August 11, 2012. On August 4, 2012, Petties complained that he needed more pain medication. On August 8, Petties complained that the pain medication he was given the day before was ineffective and upset his stomach. On August 11, 2012, Petties complained that he had not had physical therapy and that he needed different pain medication. On August 29, 2012, the Department of Corrections acknowledged receipt of the three August grievances and stated that they would forward the grievances to the medical department for comment. Petties received no further response to his August grievances.

## II.    Summary judgment standard

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**III.** <u>**Discussion**</u>

Petties claims that Dr. Carter and Dr. Obaisi were deliberately indifferent to his serious medical needs. Petties argues that Dr. Carter violated the Eighth Amendment prohibition against cruel and unusual punishment by: (1) failing to immobilize Petties's ankle for eight weeks; (2) making Petties wait six weeks for an MRI; and (3) refusing to provide surgery to repair Petties's tendon. Petties argues that Dr. Obaisi violated the Eighth Amendment prohibition against cruel and unusual punishment by: (1) failing to provide physical therapy; and (2) refusing surgery to repair Petties's tendon.

Pursuant to §1983, one may bring suit against any person who caused a violation of his constitutional rights under color of state law. 42 U.S.C. § 1983; *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Although the constitution does "not mandate comfortable prisons," it does prohibit cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment['s]" prohibition on cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). The Supreme Court elaborated on the meaning of deliberate indifference in *Farmer v. Brennan*, where it said:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage and if harm does result society might well wish to assure compensation. The common

law reflects such concerns when it imposes tort liability on a purely objective
basis. But an official's failure to alleviate a significant risk that he should have
perceived but did not, while no cause for commendation, cannot under our cases
be condemned as the infliction of cruel and unusual punishment.

*Farmer v. Brennan*, 511 U.S. at 837-38 (internal citations omitted). Thus, neither negligence nor

malpractice constitutes a violation of the constitution. *See Gayton v. McCoy*, 593 F.3d 610, 620

(7th Cir. 2010) ("Evidence that the official acted negligently is insufficient to prove deliberate

indifference."); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate

indifference is not medical malpractice; the Eighth Amendment does not codify common law

torts.").

An inmate's disagreement about a treatment decision ordinarily is not evidence of a

constitutional violation. As the Supreme Court explained in *Gamble*:

[T]he question whether an X-ray or additional diagnostic techniques or forms of
treatment is indicated is a classic example of a matter for medical judgment. A
medical decision not to order an X-ray, or like measures, does not represent cruel
and unusual punishment. At most it is medical malpractice . . .

*Gamble*, 429 U.S. at 107. Thus, "[m]ere differences of opinion among medical personnel over

questions of treatment do not give rise to an Eighth Amendment claim." *Taylor v. Dutton*, 85

F.3d 632, 1996 WL 253856 at *2 (7th Cir. 1996). Instead, "[t]o infer deliberate indifference on

the basis of a physician's treatment decision, the decision must be so far afield of accepted

professional standards as to raise the inference that it was not actually based on a medical

judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Sometimes treatment to prisoners is delayed by the realities of imprisonment. A prisoner

cannot be sent to an outside hospital without guards. Even within a prison, safety affects the

timing of prisoner movements. So, "the mere fact of delay does not amount to an Eighth

Amendment violation unless the delay can be attributed to defendants' willful neglect or reckless disregard." *Goosby v. Whitmore*, 986 F.2d 1424, 1993 WL 33924 at *8 (7th Cir. 1993); *see also Bieber v. Wisconsin Dep't of Corrections*, 62 Fed.Appx. 714, 718 (7th Cir. 2003) (affirming grant of summary judgment to defendant where "it is not even clear that the prison's medical staff was responsible for any delays."). An inmate who complains that a delay in treatment constitutes a constitutional violation "must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Petties claims that Drs. Carter and Obaisi caused a violation of his Eighth Amendment right to be free from cruel and unusual punishments. Drs. Carter and Obaisi move for summary judgment, and the Court considers each defendant, in turn.

### 1. Dr. Carter

Petties argues that Dr. Carter subjected him to cruel and unusual punishment by failing to immobilize his Achilles tendon in a boot for the first eight weeks after the injury and by making him wait six weeks for an MRI. The Court does not agree.

The delay with respect to the boot is simply a matter of different medical opinions, which is, at best, malpractice. The treating physicians had different opinions with respect to the necessity of immobilizing an Achilles tendon rupture. One outside physician, Dr. Chmell, testified that he always immobilizes an Achilles rupture. The other outside physician, Dr. Puppala, testified that it was not always necessary to immobilize an Achilles rupture, because the tendon "would probably heal without it." Such differences of medical opinion do not a constitutional violation make.

It is also important to remember that the time period before Petties's ankle was immobilized in a boot was the time period before the MRI, which is the diagnostic test that is necessary in order to determine whether the Achilles had actually been ruptured. Once the MRI showed a complete Achilles rupture, Petties was referred to Dr. Puppala, who promptly ordered the boot. Of course, Dr. Carter must have *suspected* a rupture as soon as Petties was injured, because Dr. Carter ordered the MRI on the same day (January 19, 2012) that Petties was injured. Ordering an MRI on the same day as the injury does not constitute deliberate indifference. The MRI was approved about one week later (on January 25, 2012) and was scheduled for March 6, 2012. Petties has put forth no evidence that the passage of time between when the MRI was ordered and when Petties actually received it was Dr. Carter's fault or that it was possible for a patient to have scheduled an MRI at Provena St. Joseph Medical Center any sooner.

In the meantime, Petties received treatment for his ankle. Immediately (as in the same day as his injury) Petties was given crutches so that he could avoid putting weight on his left ankle. He was granted lay-in meals and a low bunk for the same reason. Dr. Carter did not wantonly and unnecessarily leave Petties to suffer in pain. Rather, on the same day that Petties was injured, Petties was prescribed Vicodin and ice. For months, Petties continued to receive these treatments and painkillers, plus NSAIDS to reduce inflammation. No reasonable jury could conclude that Petties was subjected to cruel and unusual punishment.

Next, Petties argues that Dr. Carter subjected him to cruel and unusual punishment when he refused to provide Petties surgery for his ankle, telling him that it was too expensive. This claim fails. Only Petties thought surgery was the appropriate treatment, and inmates have no constitutional entitlement to a particular treatment. No doctor ordered or recommended surgery

for Petties's ankle.  Dr. Puppala suggested that repair *might* help and then referred Petties to an ankle specialist "for definitive treatment."  That ankle specialist, Dr. Chmell, did not recommend surgery.  In fact, Dr. Chmell testified that Petties was not a surgical candidate.  Even if a doctor had recommended surgery, it still would not have been cruel and unusual punishment not to have provided it, because the medical evidence shows that Petties's Achilles tendon had begun to heal with the conservative treatment the prison provided him:  a boot, painkillers, anti-inflammatory medicine, crutches and a low bunk.

For these reasons, the Court concludes that Petties has not put forth sufficient evidence from which a reasonable jury could conclude that Dr. Carter subjected Petties to cruel and unusual punishment.  Accordingly, the Court need not consider Dr. Carter's affirmative defenses (failure to exhaust and qualified immunity).  The Court grants Dr. Carter summary judgment with respect to Petties's claims against him.

### 2. Dr. Obaisi

Petties claims that Dr. Obaisi subjected him to cruel and unusual punishment when he failed to provide surgery and when he failed to provide Petties with physical therapy.

With respect to the surgery, the claim against Dr. Obaisi fails for the same reasons as the claim against Dr. Carter.

As for the physical therapy, it is undisputed that on July 2, 2012, Dr. Chmell recommended that Petties do "physical therapy and gentle stretching exercises at least 2 times per week."  It is also undisputed that the prison doctors did not provide Petties physical therapy sessions for his left Achilles.  Notwithstanding these facts, no reasonable jury could conclude that Dr. Obaisi subjected Petties to cruel and unusual punishment (as opposed to malpractice) by

not providing physical therapy sessions.  Petties had previously been given physical therapy for his right Achilles tendon, and, therefore, Petties could have, as Dr. Obaisi testified, performed the same exercises on his own.  Furthermore, the alternative treatment Petties was provided was working, as evidenced by the September 2012 MRI, which showed that the complete rupture had healed into a partial tear.  The prison continued to provide Petties treatment after that.

For these reasons, Dr. Obaisi is entitled to judgment as a matter of law on Petties's § 1983 claim.  The Court need not consider Dr. Obaisi's affirmative defenses.  The Court grants Dr. Obaisi summary judgment.

## IV.    Conclusion

For the reasons set forth above, the Court grants defendants' motion for summary judgment.  Defendants are granted summary judgment on all of plaintiff's claims.  The Court thanks plaintiff's appointed attorneys for their service on this case.  Case closed.

ENTER:

George M. Marovich
_____
George M. Marovich
United States District Judge

DATED:  June 30, 2014

-12-